THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DNA HOLDINGS VENTURE, INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>MICHAEL MIGLIO, and THOMAS MCLAUGHLIN<br><br>    *Defendants*. | CIVIL No.:<br><br>**VERIFIED COMPLAINT** |

Plaintiff DNA Holdings Venture, Inc. ("DNA") by way of Verified Complaint against Defendants Michael Miglio and Thomas McLaughlin, states as follows:

## INTRODUCTION

1. Defendant Miglio was DNA's legal counsel and Defendant McLaughlin was DNA's Chief Investment Officer, each of whom were employed by DNA in various capacities that provided Defendants with unrestricted access to confidential and proprietary information owned by the Plaintiff. Each of the Defendants executed agreements with DNA as a condition of their employment whereby they acknowledged the confidential and proprietary nature of information to which they would have access through Plaintiff, and agreed to maintain the confidential and proprietary nature of the information to which they were provided access. This action seeks to recover damages for Defendants' breach of their agreements with DNA, as well as damages for other wrongful acts taken by Defendants with the intention to cause reputational, commercial, and financial harm to Plaintiff.

## THE PARTIES

2. Plaintiff DNA is a corporation with business offices located at 151 Calle de San Francisco, Suite 200, San Juan, Puerto Rico 00901. Brock Peirce and Scott Walker are

10278510

directors of DNA and each holds approximately 45% of the issued and outstanding shares of DNA.

3.  Defendant Michael Miglio is an "individual residing in Colombia" (Case No. 3:26-cv-00303 at ¶6 (M.D. Tenn.)), and was retained by DNA pursuant to a certain Independent Attorney-Consultant Agreement to provide legal services and advice to DNA.  Defendant Miglio is an attorney licensed in the State of Texas.

4.  Defendant Thomas McLaughlin is an "individual residing in New Jersey" (*id.* at ¶ 3), and was hired by DNA as an independent contractor pursuant to a certain Contractor Agreement to provide managerial-type services to DNA, including leading the overall investment strategy and direction for DNA, as well as performing additional specified managerial-type duties.

### JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) in that this matter involves a matter in controversy which exceeds $75,000.00 and is between citizens of different States.

6.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the laws of the United States, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

7.  Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to the claim occurred in the District of Puerto Rico.

8.  This Court has personal jurisdiction over Defendants pursuant to Rule 4(k) of the Federal Rules of Civil Procedure and the long-arm statute of the Commonwealth of Puerto Rico

10278510

because Defendants engaged in specific actions of deceit, breached contractual obligations, and committed tortious acts, all within Puerto Rico, from which this action directly arises.

## FACTS COMMON TO ALL COUNTS

9. DNA and Miglio executed a May 30, 2025 Independent Attorney-Consultant Agreement (the "Miglio Agreement") setting forth the terms and conditions by which Miglio was retained to provide legal services to DNA.

10. Section 8 of the Miglio Agreement is entitled "Confidentiality" and provides the following:

> Attorney-Consultant [Miglio] acknowledges that he/she may have access to the Company's confidential and proprietary information as the Company determines is necessary for him/her to provide the services described above. Such confidential information may include, without limitation: (i) business and financial information; (ii) business methods and practices; (iii) technologies and technological strategies; (iv) marketing strategies; (v) customer lists and other customer information. Also, Confidential information includes business secrets, trade secrets, strategic plan, financial information, technology programs, and any other such information the Company may designate as confidential ("Confidential Information").

> Attorney-Consultant agrees not to disclose Confidential Information to any other person (unless required by law, in which case Attorney-Consultant will immediately provide the Company with written notice of the requirements to which Attorney-Consultant believes they are subject and provide the Company with no less than two (2) days to respond and to protect its interests) or use for personal gain any Confidential Information at any time during or after the Agreement Term, unless the Company grants its prior, express, written consent to such disclosure. In addition, Attorney-Consultant will use their best efforts to prevent any such disclosure. Confidential Information will not include information that is in the public domain, unless such information is or has been released into public domain through Attorney-Consultant's unauthorized actions. The obligations related to confidentiality will survive the termination or expiration of the agreement.

> The Attorney-Consultant also will agree to comply with the "Confidentiality and Protective Covenant Agreement" which is hereby incorporated by reference, as Exhibit B of this Agreement.

3

10278510

11. The Independent Attorney-Consultant Agreement included a provision restricting DNA's right to terminate the attorney-client relationship. Specifically, Section 2 of the Attorney-Consultant Agreement defines the "Term" of the agreement as "[. . .] one year from the date of signing[. . .]" Section 11(a) of the Attorney-Consultant Agreement states:

> *The Company may terminate this Agreement without cause by administering thirty (30) days notice after the Term of this Agreement has expired.*

(emphasis added).

12. Miglio was paid a monthly salary under the Independent Attorney-Consultant Agreement.

13. Miglio provided general legal services and legal advice pertaining to all Company matters while not licensed to practice law in Puerto Rico.

14. Despite admittedly residing in the Republic of Colombia, Miglio's Contractor Agreement describes him as a "resident of Puerto Rico" and engaged to provide "general legal services and legal advice pertaining to all Company matters."

15. Miglio is and was licensed in the State of Texas, but he was not licensed in the Commonwealth of Puerto Rico.

16. DNA and McLaughlin entered into two successive agreements:

    a. On October 4, 2024, McLaughlin entered into an employment agreement (the "Employment Agreement") with Coral Capital Management, LLC, an entity that was acquired by DNA. Pursuant to Exhibit "A" of the Employment Agreement, McLaughlin agreed to be bound by a Proprietary Information, Invention Assignment, Non-Competition and Non-Solicitation Agreement (the "Proprietary Information Agreement"). Pursuant to Section 1 of the Proprietary Information Agreement, McLaughlin agreed to not disclose improperly any of DNA's

4

10278510

Proprietary Information and to return it when his employment terminated. Proprietary Information was defined, in part, as:

> Proprietary Information includes all confidential, proprietary or trade secret information and ideas in whatever form or state of development, tangible or intangible, whether disclosed to or learned or developed by me alone or with others, and whether or not marked confidential or proprietary, pertaining in any manner to the business of the Company or its customers, vendors, suppliers, consultants, contractors, partners and business associates, including but not limited to any and all (i) Intellectual Property (defined below); (ii) financial and marketing information including costs, profits, results, markets, strategies and sales, in each case of the Company or any of its customers, vendors or suppliers; (iii) other financial information or business plans of the Company, including but not limited to past, current, or future activities of the Company such as funding activities, lists of stockholders or investors, market sizing data, and intellectual property strategies and other legal processes; (iv) identities of or other information regarding actual or potential customers or trade contacts of the Company, including but not limited to any customer or vendor or supplier lists.

b. On August 24, 2025, McLaughlin executed a Contractor Agreement setting forth the terms by which McLaughlin was employed to provide services to DNA (the "McLaughlin Agreement"). The Contractor Agreement was made retroactive, effective as of October 1, 2024.

 i. Section 5 of the McLaughlin Agreement, entitled "Confidentiality", contains six subsections: Subsection 5.1 defines "Confidential Information;" Subsection 5.2 sets forth McLaughlin's acknowledgement of the economic value of DNA's Confidential Information; Subsection 5.3 sets forth the requirements of non-use and non-disclosure by McLaughlin of DNA's Confidential Information; Subsection 5.4 contains McLaughlin's agreement that he will not improperly use, disclose, or induce DNA to use any confidential information of any third party during his employ by DNA; Subsection 5.5 sets forth McLaughlin's acknowledgement that DNA

10278510

received and may in the future receive confidential information of third parties subject to a duty by DNA to maintain confidentiality of such information and that McLaughlin agrees to hold all such confidential or proprietary information in the strictest confidence as if it was DNA's Confidential Information; and Subsection 5.6 provides for the return of materials by McLaughlin to DNA of all Confidential Information upon termination and/or expiration of the McLaughlin Agreement.  Under Section 5.2 of the McLaughlin Agreement, McLaughlin acknowledged that the Confidential Information to which he had access "has independent economic value, actual or potential, that is not generally known to the public or to others who could obtain economic value from its disclosure or use, and that the Confidential Information is subject to a reasonable effort by [DNA] to maintain its secrecy and confidentiality."

17. Miglio's contract with DNA was terminated in or about January 2026.

18. After Miglio left DNA, Miglio, McLaughlin and co-conspirators, known and unknown, used DNA client Proprietary Information, client Confidential Information and attorney-client privileged information to attempt to extort money from Scott Walker and Brock Pierce, and when that failed, to recruit additional investors, employees and former employees to join them in a lawsuit against Scott Walker, Brock Pierce and DNA,

19. The real purpose of the lawsuit was to improperly enrich themselves, in breach of their contractual, fiduciary and professional ethical duties to DNA.

20. On February 12, 2026, Miglio and McLaughlin caused their chosen lawyer, Ryan Downton (a Texas-licensed lawyer living in Dorado, Puerto Rico), to issue a demand letter to Scott

6

10278510

Walker and Brock Pierce. Falsely and wrongfully accusing Scott Walker and Brock Pierce of impropriety in their leadership of DNA, the Defendants and two investors – through Attorney Ryan Downton -- demanded $25,000,000 from Scott Walker and Brock Pierce personally, or they threatened to file a costly and protracted lawsuit which would "tie in every past and present holder of options and shares".

21. In this letter, the Defendants admitted that they were unlawfully withholding and exploiting DNA's Proprietary, client Confidential and privileged information. Specifically, the Defendants' lawyer stated: "My clients have in their possession a copy of nearly every internal file, agreement, email, and conversations which substantiate all of the above."

22. The items referenced in Attorney Ryan Downton's email were DNA's Proprietary, client Confidential, and Privileged Information.

23. The Defendants did not safeguard DNA's Confidential Information, Proprietary Information and Privileged Information, as they were contractually and ethically required to do.

24. After the Defendants' demand was rejected by Scott Walker and Brock Pierce, Defendants, individually and together with coconspirators, disseminated DNA's Confidential Information to the public in a case filed by Defendants and certain investors against Brock Pierce and Scott Walker in the Middle District of Tennessee, Case No. 3:26-cv-00303 (M.D. Tenn.), filed on or about March 13, 2026 (the "Direct Action").

25. After the Defendants twice failed to obtain a temporary restraining order in the Direct Action, the Defendants and coconspirators, known and unknown, caused DNA's Proprietary, client Confidential and Privileged Information to be disclosed in a separate

7

10278510

investor lawsuit in the Middle District of Tennessee against Brock Pierce and Scott Walker with DNA as nominal Defendant, Case No. 26-cv-00358 (M.D. Tenn.) (the "Derivative Action") (collectively the Direct Action and the Derivative Actions are referred to as "Tennessee Lawsuits").

26. The Tennessee Lawsuits filed by Defendants and their coconspirators were designed to embarrass and harass Scott Walker and Brock Pierce at the expense of DNA, and included numerous salacious factual allegations, many of which were false or misrepresented, with no connection to the claims asserted.

27. Miglio and McLaughlin falsely alleged in the Tennessee Lawsuits that they and other employees, former employees and shareholders had been damaged because Scott Walker and Brock Pierce fraudulently breached an agreement with DNA.

28. Miglio, *in his capacity as the lawyer for DNA*, was involved in the negotiation, drafting and execution of this agreement, and thus he knew that these allegations were false.

29. Moreover, in making these allegations, Miglio disclosed attorney client communications, attorney work product, and client confidential information, all to benefit himself.

30. Miglio subsequently admitted in a group text message that he had violated his fiduciary duty and that he was subject to a malpractice claim.

31. As a result of Defendants' unauthorized disclosure of DNA Confidential Information, clients (former, current, and potential), colleagues, business associates, and competitors of the Plaintiff have obtained non-public confidential and proprietary information belonging to the Plaintiff.  As well, any member of the general public who wishes also has public access to DNA's confidential and proprietary information.

8

10278510

32. All claims of the DNA investor plaintiffs in the Tennessee Lawsuits were dismissed with prejudice through a settlement after the investor plaintiffs failed to obtain a temporary restraining order in the derivative action (principally because of the numerous typographical and grammatical errors contained in the pleadings).

33. DNA has demanded that the Defendants return DNA's Proprietary, client Confidential and Privileged Information.

34. The Defendants still have confidential information which have yet to be returned to DNA, and they have refused to return the confidential information even after it was demanded.

35. The Miglio Agreement and the McLaughlin Agreement contain provisions requiring the Defendants to indemnify DNA in circumstances including, but not limited to, breaching the terms of their respective agreements.

36. DNA was damaged as a result of the conduct of Miglio, McLaughlin and their co-conspirators, known and unknown.

## FIRST COUNT

### (Fraud in the Performance of a Contract — All Defendants)

*31 L.P.R.A. § 10801 (Article 1536, formerly Article 1802) and 31 L.P.R.A. § 3018 (Article 1076)*

37. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

38. Defendants negotiated and entered into written contracts with DNA whereby designated services were to be performed by them for the benefit of DNA and its principals.

39. As part of their engagement, Defendants were provided unrestricted access to DNA's confidential and proprietary information, subject to strict non-disclosure obligations.

9

10278510

40. At the time of contracting, Defendants falsely represented to Plaintiff that they would abide by the non-disclosure obligations expressly required as a condition of their engagement, when in truth they harbored an intent to exploit such information for their own personal gain.

41. Plaintiff reasonably relied on Defendants' representations that they would handle the confidential and proprietary information of DNA in the manner negotiated and contracted by the parties for the express purpose of protecting Plaintiff's interest in maintaining the confidentiality of its non-public information.

42. In reliance upon Defendants' false representations, Plaintiff engaged Defendants and granted them access to DNA's confidential and proprietary information so that Defendants could perform their respective duties.

43. Notwithstanding Plaintiff's full performance of its contractual obligations, including payment of all agreed compensation, Defendants intentionally breached their agreements with Plaintiff by misappropriating DNA's confidential and proprietary information and causing that information to be publicly disclosed for their own improper purposes, thereby perpetrating fraud in the performance of their contracts with DNA.

44. As a result of Defendants' fraudulent conduct, Plaintiff has suffered reputational harm and economic loss in excess of $75,000.00.

47. Defendants' conduct was intentional, willful, and undertaken with the specific purpose of defrauding Plaintiff and enriching themselves at Plaintiff's expense.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding compensatory and consequential damages;

10278510

(2) awarding punitive damages;

(3) awarding Plaintiff attorneys' fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## SECOND COUNT

## (Breach of Contract by All Defendants)

48. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49. Plaintiff and Defendants entered into valid and enforceable written agreements governing the terms of Defendants' engagement and/or employment by DNA.

50. Defendants' failure to comply with the terms of their agreements, specifically the provisions pertaining to the non-disclosure, non-use, and return of confidential and proprietary information, constitutes a non-performance of the parties' agreement and is a material breach of the parties' contracts.

51. Plaintiff fully performed its obligations under the parties' agreements.

52. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered economic loss in excess of $75,000.00.

WHEREFORE, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages;

(2) a preliminary and permanent order requiring Defendants to return to Plaintiff all confidential and proprietary information in their possession, custody, or control;

(3) a preliminary and permanent order enjoining Defendants from any further use or disclosure of Plaintiff's confidential and proprietary information;

(4) awarding Plaintiff punitive damages;

10278510

(5) awarding Plaintiff attorney fees and costs of suit; and

(6) granting Plaintiff such other and further relief as the Court deems just and equitable.

## THIRD COUNT

### (Breach of Obligation of Good Faith and Fair Dealing by All Defendants)

53. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54. Under the Puerto Rico Civil Code, an obligation of good faith governs the negotiation, performance, and enforcement of contracts, which includes duties of loyalty, collaboration, information sharing, and the avoidance of arbitrary or abusive conduct. This duty prevents parties from destroying or injuring the other party's right to receive the benefits of the contract.

55. Defendants' failure to comply with the terms of their agreements, specifically provisions pertaining to the non-disclosure of confidential and proprietary information, constitutes non-performance of the parties' agreement and is a breach of the parties' contracts.

56. Defendants' misappropriation of DNA's confidential and proprietary information and their deliberate public disclosure of such information constitutes a violation of the obligation of good faith and fair dealing inherent in the parties' contractual relationships.

57. Defendants' conduct was designed to and did destroy Plaintiff's right to receive the benefits of its contracts with Defendants, including the protection of its confidential and proprietary information.

58. As a direct and proximate result of Defendants' breach of the obligation of good faith and fair dealing, Plaintiff has suffered economic loss in excess of $75,000.00.

12

10278510

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff punitive damages;

(3) awarding Plaintiff attorney fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## FOURTH COUNT

### (Breach of Fiduciary Duty as to Defendant Miglio)

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Miglio, as the attorney for DNA, stood in a fiduciary relationship with Plaintiff and owed duties of loyalty, confidentiality, and the exercise of reasonable skill and care, and had a duty to act or give advice for the benefit of the Plaintiff in all matters within the scope of his engagement under the Miglio Agreement.

61. Miglio breached his fiduciary duties to DNA by, *inter alia*: (i) disclosing attorney-client privileged communications to third parties and in public court filings; (ii) disclosing attorney work product; (iii) disclosing client confidential information; (iv) using confidential information obtained through the attorney-client relationship for his personal benefit and to the detriment of DNA; (v) acting adversely to the interests of his client; and (vi) failing to return client files and confidential information upon termination of the engagement.

62. Miglio's failure to comply with the terms of the Miglio Agreement, specifically provisions pertaining to the non-disclosure of confidential and proprietary information obtained by Miglio from Plaintiff in his capacity as attorney for Plaintiff, constitutes the following: (i)

13

10278510

breach of the duty of loyalty and confidentiality; (ii) breach of the duty to exercise reasonable skill and care; (iii) neglect and failure to perform his duties as retained attorney for DNA; and (iv) breach of the parties' agreement creating the attorney-client relationship with DNA.

63. Miglio is liable for all harm resulting from his breach of the fiduciary duties imposed on him by the attorney-client relationship with DNA.

64. As a direct and proximate result of Miglio's breach of fiduciary duty, Plaintiff has suffered economic loss in excess of $75,000.00.

WHEREFORE, Plaintiff requests entry of Judgment in favor of Plaintiff and against Miglio:

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff punitive damages;

(3) awarding Plaintiff attorney fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## FIFTH COUNT

### (Misappropriation of Trade Secrets Under Puerto Rico Law by All Defendants)

65. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Puerto Rico has adopted the Uniform Trade Secrets Act ("PUTSA"), 10 L.P.R.A. § 4131 et seq., which provides civil remedies for the misappropriation of trade secrets.

67. The confidential information disclosed by Defendants qualifies as trade secrets under PUTSA because it derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and was subject to reasonable efforts by Plaintiff to maintain its secrecy.

14

10278510

68. Defendants acquired DNA's trade secrets through their positions of trust and confidence, subject to express contractual obligations of non-disclosure.

69. Defendants' unauthorized retention, use and disclosure of Plaintiff's trade secrets—including through public court filings and dissemination to third parties—constitutes actionable misappropriation under PUTSA.

70. Defendants' misappropriation was willful and malicious, undertaken with the deliberate intent to harm Plaintiff and to benefit themselves.

71. As a direct and proximate result of Defendants' misappropriation of trade secrets, Plaintiff has suffered economic loss in excess of $75,000.00.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff exemplary damages up to twice the amount of actual damages pursuant to 10 L.P.R.A. § 4133;

(3) a preliminary and permanent order requiring Defendants to return to Plaintiff all confidential and trade secret information in their possession, custody, or control;

(4) a preliminary and permanent order enjoining Defendants from any further use or disclosure of Plaintiff's trade secrets and confidential information;

(5) awarding Plaintiff reasonable attorneys' fees pursuant to 10 L.P.R.A. § 4134;

(6) granting Plaintiff such other and further relief as the Court deems just and equitable.

## SIXTH COUNT

### (Tortious Interference with Business Relations by All Defendants)

15

10278510

72. Plaintiff repeats the allegations of the First through Fifth Counts of the Complaint as if set forth in full and at length herein.

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Under Puerto Rico's general tort statute, Article 1536 of the Puerto Rico Civil Code of 2020, 31 L.P.R.A. § 10801, a person who causes damage to another through fault or negligence is obligated to repair such damage.

75. Plaintiff had existing and prospective business relationships with clients, investors, business associates, and partners, from which Plaintiff derived economic benefit.

76. Defendants had knowledge of these business relationships by virtue of their positions within DNA and their access to DNA's client lists, investor information, and business records. Defendants knew of these business relationships.

77. Defendants intentionally interfered with Plaintiff's business relationships by: (a) filing baseless lawsuits incorporating Plaintiff's confidential information, designed to embarrass and harass Plaintiff and its principals; (b) contacting DNA's shareholders, investors, employees, and former employees to encourage them to take action against DNA; and (c) disseminating confidential business information to third parties and the public. The filing of baseless lawsuits using confidential information, designed to embarrass and harass Plaintiff, interfered with Plaintiff's business relationships and caused harm to Plaintiff's business relationships and reputation.

78. Defendants' conduct was without justification or privilege and was undertaken for the improper purpose of harming Plaintiff and enriching themselves.

79. As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered economic loss in excess of $75,000.00.

16

10278510

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff punitive damages;

(3) awarding Plaintiff attorneys' fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

### SEVENTH COUNT

### (Abuse of Rights by All Defendants)

80. Plaintiff repeats the allegations of the First through Sixth Counts of the Complaint as if set forth in full and at length herein.

81. Puerto Rico recognizes the doctrine of "abuse of rights" ("abuso del derecho"), which provides that the exercise of a right in a manner that exceeds the bounds of good faith, that has no legitimate purpose other than to cause harm, or that is disproportionate to the interest being protected, may give rise to liability under Article 1536 of the Puerto Rico Civil Code of 2020.

82. Defendants filed lawsuits containing confidential information and salacious allegations bearing no connection to the claims asserted, for the primary purpose of harassing and embarrassing Plaintiff and its principals, rather than vindicating any legitimate legal right.

83. Defendants' conduct in weaponizing the judicial process—filing lawsuits designed to embarrass and harass—to cause reputational and financial harm to Plaintiff constitutes an abuse of the right of access to the courts.

84. As a direct and proximate result of Defendants' abuse of rights, Plaintiff has suffered economic loss in excess of $75,000.00.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

10278510

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff punitive damages;

(3) awarding Plaintiff attorneys' fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## EIGHTH COUNT

### (Legal Malpractice as to Defendant Miglio)

31 L.P.R.A. § 10801 (Article 1536 – formerly Article 1802, 31 L.P.R.A. § 5141);
4 L.P.R.A. § 726 et seq.

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. At all relevant times, an attorney-client relationship existed between DNA and Miglio pursuant to the Miglio Agreement, under which Miglio was retained to provide "general legal services and legal advice pertaining to all Company matters."

87. By virtue of the attorney-client relationship, Miglio owed DNA a duty to exercise the degree of knowledge, skill, and care ordinarily possessed and exercised by members of the legal profession in similar circumstances.

88. Miglio breached his professional duty of care to DNA by, among other things: (i) providing legal services and legal advice to a Puerto Rico corporation concerning Puerto Rico matters without being licensed to practice law in the Commonwealth of Puerto Rico, in violation of 4 L.P.R.A. § 726 et seq.; (ii) representing or implying that he was authorized to practice law in Puerto Rico when he was not, thereby inducing DNA to enter into the Miglio Agreement; (iii) using confidential client information obtained through the attorney-client relationship for his own personal benefit and to the detriment of his client; (iv) disclosing attorney-client privileged communications, attorney work product, and client confidential

10278510

information to third parties and in public court filings without authorization; (v) acting adversely to DNA's interests by initiating and participating in litigation against DNA and its principals; and (vi) failing to disclose and address conflicts of interest that arose during his engagement.

89. Miglio's unauthorized practice of law, misrepresentations, and illegal provision of legal services without proper licensure in Puerto Rico constitutes strong evidence of breach of the applicable standard of care and of misconduct in the attorney-client relationship. A reasonably prudent attorney would not have undertaken to provide "general legal services and legal advice pertaining to all Company matters" for a Puerto Rico corporation without being duly admitted to practice law in Puerto Rico or without disclosing his lack of licensure to his client.

90. Miglio's conduct fell below the standard of care in multiple additional respects, including his disclosure of privileged and confidential information, his use of client information for personal gain, and his participation in adverse litigation against his own client—conduct that no reasonably prudent attorney would undertake.

91. DNA reasonably relied upon Miglio's professional judgment, legal advice, and representations regarding his qualifications to provide legal services.

92. As a direct and proximate result of Miglio's breach and legal malpractice, Plaintiff suffered damages and economic loss in excess of $75,000.00, including but not limited to: (i) fees paid for legal services improperly rendered by Miglio; (ii) losses caused by negligent legal advice concerning Puerto Rico matters (i.e. resulting from legal advice provided by an attorney who was not competent to advise on Puerto Rico law); (iii) harm resulting from the unauthorized disclosure of privileged and confidential

19

10278510

information; and (iv) costs incurred to retain successor counsel to address the consequences of Miglio's misconduct.

93. Legal services rendered by Miglio without proper licensure in Puerto Rico are voidable, and all fees collected by Miglio for such services are subject to disgorgement.

94. Plaintiff seeks compensatory damages, restitution and/or disgorgement of fees paid, costs, and such other relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Miglio:

(1) awarding Plaintiff compensatory damages;

(2) disgorgement of all fees paid to Miglio under the Independent Attorney-Consultant Agreement;

(3) awarding Plaintiff punitive damages based on Miglio's willful and egregious misconduct;

(4) a preliminary and permanent order enjoining Miglio from further disclosing DNA's client Confidential and Privileged Information;

(5) awarding Plaintiff attorneys' fees and costs of suit; and

(6) granting Plaintiff such other and further relief as the Court deems just and equitable.

<u>**NINTH COUNT**</u>

<u>**(Civil Conspiracy by All Defendants)**</u>

95. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

96. Defendants Miglio and McLaughlin, together with others known and unknown, knowingly and intentionally entered into an agreement, combination, or understanding among themselves to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

20

10278510

97. The object of Defendants' conspiracy was to misappropriate and publicly disclose Plaintiff's confidential and proprietary information, breach their contractual and fiduciary obligations to Plaintiff, damage Plaintiff's business reputation and relationships, and to coerce Plaintiff into paying undeserved and exorbitant sums to Defendants and others.

98. In furtherance of the conspiracy, Defendants committed the following overt acts: (i) coordinating the unauthorized retention and disclosure of DNA's confidential and proprietary information; (ii) causing lawsuits to be filed containing such confidential information designed to embarrass and harass Plaintiff; and (iii) sharing confidential information among themselves for use against Plaintiff

99. Each Defendant actively participated in the conspiracy and knowingly assisted, encouraged, and cooperated with the other Defendants in committing the wrongful acts alleged herein.

100.  As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered economic loss in excess of $75,000.00.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff punitive damages;

(3) a preliminary and permanent order enjoining the Defendants, and all those acting in concert with them, from further disclosing DNA's Proprietary, client Confidential and Privileged Information;

(4) a preliminary and permanent order directing the Defendants, and all those acting in concert with them, to return all of DNA's Proprietary, client Confidential and Privileged Information in their possession, custody and control and to destroy all copies;

21

10278510

(5) awarding Plaintiff attorneys' fees and costs of suit; and

(6) granting Plaintiff such other and further relief as the Court deems just and equitable.

## TENTH COUNT

### (Breach of Non-Disparagement Clause as to Defendant Miglio)

101. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

102. Section 13 of the Miglio Agreement contains a non-disparagement clause that provides:

> Attorney-Consultant will not disparage the Company or any of its directors, officers, representatives, agents or employees nor otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of the Company, or any of its directors, officers, agents or employees.

103. Miglio breached the non-disparagement clause by filing and causing to be filed lawsuits containing false and salacious factual allegations designed to embarrass and harass Plaintiff and its principals, publicly disseminating false and damaging allegations against DNA, and by making disparaging statements about the Company and its directors, officers, and employees to third parties.

104. Miglio's conduct constitutes actions that could reasonably be expected to—and in fact did— adversely affect the personal and professional reputation of the Company and its directors, officers, and employees, in direct violation of his contractual obligations.

105. As a direct and proximate result of Miglio's breach of the non-disparagement clause, Plaintiff has suffered reputational harm and economic loss in excess of $75,000.00.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Miglio:

(1) awarding Plaintiff compensatory damages;

(2) awarding Plaintiff punitive damages;

22

10278510

(3) an order enjoining Miglio from making any further disparaging or defamatory statements about Plaintiff, the Company, or any of its directors, officers, or employees;

(4) awarding Plaintiff attorneys' fees and costs of suit; and

(5) granting Plaintiff such other and further relief as the Court deems just and equitable.

## ELEVENTH COUNT

### (Demand for Contractual Indemnification by All Defendants)

106. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

107. Section 7 of the Miglio Agreement contains an indemnification provision that requires the Attorney-Consultant to indemnify and hold harmless the Company, its officers, directors, employees, and agents from and against any and all third-party claims, suits, actions, demands, and proceedings, and all resulting losses, damages, liabilities, costs, and expenses (including reasonable attorneys' fees), to the extent such claims arise directly from: (i) the Attorney-Consultant's gross negligence or willful misconduct in the performance of the Services; or (ii) a material breach by the Attorney-Consultant of the Agreement.

108. The McLaughlin Agreement contains indemnification provisions requiring McLaughlin to indemnify and hold harmless the Company, its officers, directors, employees, and agents from and against any and all third-party claims, suits, actions, demands, and proceedings, and all resulting losses, damages, liabilities, costs, and expenses (including reasonable attorneys' fees), to the extent such claims arise directly from: (i) McLaughlin's gross negligence or willful misconduct in the performance of the Services; or (ii) a material breach by McLaughlin of the Agreement.

23

10278510

109. The McLaughlin Agreement contains substantially similar indemnification provisions requiring McLaughlin to indemnify and hold harmless the Company from and against claims arising from his gross negligence, willful misconduct, or material breach of his agreement.

110. Defendants' conduct as alleged herein constitutes both gross negligence and willful misconduct in the performance of their services, as well as and material breaches of their respective agreements with DNA.

111. As a result of Defendants' conduct, Plaintiff has incurred and continues to incur losses, damages, liabilities, costs, and expenses, including reasonable attorneys' fees, in defending against claims and actions initiated by Defendants and in pursuing recovery for the harm caused by Defendants' wrongful conduct.

112. Defendants are obligated under their respective agreements to indemnify and hold harmless Plaintiff for all such losses, damages, liabilities, costs, and expenses.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff full indemnification for all losses, damages, liabilities, costs, and expenses incurred as a result of Defendants' conduct;

(2) awarding Plaintiff all reasonable attorneys' fees and costs incurred in this action and in defending against Defendants' claims;

(3) awarding Plaintiff costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## TWELFTH COUNT

24

10278510

**(Declaratory Judgment – Unenforceability of Termination Restriction as to Defendant**

**Miglio)**

113. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

114. Section 11(a) of Miglio Agreement purports to restrict DNA's right to terminate the Agreement without cause until after the one-year Term has expired.

115. Under well-established principles of professional responsibility and public policy, a client has the absolute right to terminate an attorney-client relationship at any time, with or without cause.

116. Contractual provisions that purport to limit or restrict a client's right to discharge an attorney are void and unenforceable as against public policy.

117. Section 11(a) of the Miglio Agreement purports to restrict DNA's right to terminate the Agreement without cause until after the one-year Term has expired. Under well-established principles of professional responsibility and public policy, a client has the absolute right to terminate an attorney-client relationship at any time, with or without cause.

118. Contractual provisions that purport to limit or restrict a client's right to discharge an attorney are void and unenforceable as against public policy.

119. Section 11(a) of the Miglio Agreement, to the extent it restricts DNA's right to terminate the attorney-client relationship without cause during the initial Term, is void and unenforceable as against public policy.

120. An actual controversy exists between Plaintiff and Miglio regarding the validity and enforceability of Section 11(a) of the Independent Attorney-Consultant Agreement.

25

10278510

121.  DNA was harmed by the inclusion of this unenforceable provision in the Agreement, as Miglio has falsely claimed that his agreement was improperly terminated and it improperly restricted DNA's ability to terminate the attorney-client relationship and may have caused DNA to pay fees to Miglio during a period when DNA would have otherwise terminated the relationship.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Miglio:

(1) a declaratory judgment that Section 11(a) of the Independent Attorney-Consultant Agreement is void and unenforceable as against public policy to the extent it restricts DNA's right to terminate the attorney-client relationship;

(2) recovery of any fees paid to Miglio during any period when DNA was improperly restricted from terminating the Agreement;

(3) awarding Plaintiff attorneys' fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

### THIRTEENTH COUNT

### (Misappropriation of Trade Secrets Under the Defend Trade Secrets Act by All Defendants)

122.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

123.  The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., creates a federal private civil cause of action for the misappropriation of trade secrets that are related to a product or service used in, or intended for use in, interstate or foreign commerce.

124.  Plaintiff's trade secrets, including without limitation business and financial information, business methods and practices, marketing strategies, customer lists, investor lists, and

26

10278510

other confidential and proprietary information, are related to products and services used in interstate and foreign commerce.

125. Plaintiff's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

126. Plaintiff took reasonable measures to keep such information secret, including requiring Defendants to execute confidentiality agreements as a condition of their engagement by DNA.

127. Defendants misappropriated Plaintiff's trade secrets by disclosing and using Plaintiff's trade secrets without consent, including by incorporating such trade secrets into public court filings and disseminating such information to third parties for personal gain.

128. Defendants knew or had reason to know that their knowledge of the trade secrets was derived from or through persons who owed a duty to Plaintiff to maintain the secrecy of such information.

129. Defendants' misappropriation was willful and malicious, undertaken with the deliberate intent to harm Plaintiff.

130. As a direct and proximate result of Defendants' misappropriation of trade secrets in violation of the DTSA, Plaintiff has suffered economic loss in excess of $75,000.00.

WHEREFORE, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages for actual loss caused by the misappropriation and unjust enrichment caused by the misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(B);

27

10278510

(2) awarding Plaintiff exemplary damages in an amount up to two times the amount of damages awarded pursuant to 18 U.S.C. § 1836(b)(3)(C);

(3) a preliminary and permanent order requiring Defendants to return to Plaintiff all trade secret information in their possession, custody, or control;

(4) a preliminary and permanent order enjoining Defendants from any further use or disclosure of Plaintiff's trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(A);

(5) awarding Plaintiff reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D);

(6) granting Plaintiff such other and further relief as the Court deems just and equitable.

## FOURTEENTH COUNT

### (Conversion — All Defendants)

*31 L.P.R.A. § 10801 (Article 1536, formerly Article 1802)*

131. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

132. Plaintiff is the rightful owner of the confidential documents, proprietary files, agreements, emails, communications, and other tangible and intangible property that Defendants retained upon the termination of their respective engagements with DNA.

133. Defendants were contractually obligated to return all such materials to Plaintiff upon termination of their engagements.

134. Despite written demand, Defendants have refused to return Plaintiff's property and have instead exercised unauthorized dominion and control over it, using it for their own benefit and to the detriment of Plaintiff.

135. Defendants' retention and use of Plaintiff's property is without right, authorization, or justification.

28

136. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered economic loss in excess of $75,000.00.

**WHEREFORE**, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff compensatory damages;

(2) an order requiring Defendants to return all of Plaintiff's property in their possession, custody, or control;

(3) awarding Plaintiff attorneys' fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## FIFTEENTH COUNT

### (Unjust Enrichment — All Defendants)

137. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

138. Defendants have received a benefit at Plaintiff's expense by retaining and exploiting DNA's confidential and proprietary information for their personal gain, including by using such information to pursue claims against Plaintiff and its principals.

139. Defendants' retention and exploitation of Plaintiff's confidential information was without legal justification and in violation of their contractual and fiduciary obligations.

140. It would be unjust and inequitable for Defendants to retain the benefits derived from the misuse of Plaintiff's confidential and proprietary information without compensating Plaintiff.

141. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has suffered economic loss in excess of $75,000.00.

29

10278510

WHEREFORE, Plaintiff requests entry of Judgment in favor of Plaintiff and against Defendants:

(1) awarding Plaintiff damages equal to the value of the benefit conferred upon Defendants;

(2) disgorgement of all profits or gains derived by Defendants from the misuse of Plaintiff's confidential information;

(3) awarding Plaintiff attorneys' fees and costs of suit; and

(4) granting Plaintiff such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, as follows:

(a) Compensatory, consequential, and special damages in an amount to be determined at trial;

(b) Punitive and exemplary damages;

(c) Disgorgement of all fees paid to Defendants and all profits derived from the misuse of Plaintiff's confidential information;

(d) A declaratory judgment that Section 11(a) of the Miglio Agreement is void and unenforceable;

(e) Preliminary and permanent injunctive relief enjoining Defendants from any further use, disclosure, or dissemination of Plaintiff's confidential, proprietary, and trade secret information;

30

10278510

(f) An order requiring Defendants to immediately return all confidential, proprietary, and

trade secret information in their possession, custody, or control;

(g) Pre-judgment and post-judgment interest at the maximum rate permitted by law;

(h) Reasonable attorneys' fees and costs of suit; and

(i) Such other and further relief as the Court deems just and equitable.


Respectfully submitted,

**S/ WILLIAM J. HUGHES, JR.**
William J. Hughes, Jr., Esq.
Bar No.: 310103
E-Mail: wjhughes@pbnlaw.com


**PORZIO BROMBERG & NEWMAN, P.C.**
17 E. 8th Street
Ocean City, NJ  08226
973-889-4308

**S/ GABRIELA DÁVILA MICHEO**
Gabriela Dávila Micheo, Esq.
Bar No.: 232008
E-mail: gmdavilamicheo@pbnlaw.com

**PORZIO BROMBERG & NEWMAN (PR) LLC**
174 de Diego Avenue
San Juan, PR 00927
939-475-1733



Dated: May 14, 2026

31

10278510

## VERIFICATION

I, _Scott Walker_____, of sound mind and full age, pursuant to 28 U.S.C. § 1746,

hereby declare:

1.      I am the Plaintiff or authorized representative of the Plaintiff in the captioned

matter.

2.      I have read this Verified Complaint.

3.      I swear under penalty of perjury that the facts stated herein are true and correct to

the best of my knowledge and belief.

I declare under the penalty of perjury that the foregoing statements are true and correct.

_Scott Walker_____

Scott Walker
_____

Dated: May 14, 2026

32

10278510